```
                -UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT


ROBERT ROGERS,
          - Plaintiff



          v.                        CIVIL NO. 3:12-CV-01394 (TPS)


MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
          - Defendant
```

## MAGISTRATE JUDGE'S OPINION

The plaintiff, Robert Rogers, brings this appeal under §§ 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision by the Commissioner of the Social Security Administration ("SSA") denying his application for Title XVI Supplemental Security Income ("SSI"). The plaintiff has filed a motion to reverse or remand the decision for further administrative proceedings. **(Dkt. #18).** The defendant has moved for an order affirming the decision. **(Dkt. #21).** For the reasons stated below, the plaintiff's motion should be **DENIED.** The defendant's motion to affirm should be **GRANTED.** 28 U.S.C. § 636(b)(1)(A).

I.   **STANDARD OF REVIEW**

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function. Zambrana v. Califano, 651 F.2d 842, 844 (2d

Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977). A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted). "Substantial evidence" is less than a preponderance, but "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing whether the evidence supports the Commissioner's position, is required to "review the record as a whole")(citations omitted). Still, the ALJ need not "reconcile every conflicting shred of medical testimony." Miles v. Harris, 645 F.2d 122, 124 (2d Cir.

1981).  In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision."  Morris v. Barnhardt, 02 Civ. 0377 (AJP), 2002 U.S. Dist. LEXIS 13681, at *12 (S.D.N.Y. July 26, 2002).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims.  Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); 20 C.F.R. § 416.920.  First, the Commissioner considers if the claimant is presently working in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  If not, the Commissioner next considers if the claimant has a medically severe impairment.  Id. § 416.920(a)(4)(ii).  If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment. Id. § 416.920(a)(4)(iii), Part 404, Subpart P, Appendix 1. If so, the disability is granted.  If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him or her to perform any past work.  Id. § 416.920(a)(4)(iv).  If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform. Id. § 416.920(a)(4)(v).  If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability

benefits.  Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

While the claimant bears the burden of proving the first four steps, the Commissioner must prove the final one.  Berry, 675 F.2d at 467.  Thus, if the claimant is successful in showing that he is unable to continue his past relevant work, "the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.  Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

**II.   DISCUSSION**

    **A.   The ALJ's Decision and Procedural History**

The facts and procedural history are familiar to the parties, and the Court will not repeat them in depth.  As outlined above, the Commissioner uses a five-step sequential evaluation process when evaluating disability claims.  20 C.F.R. § 416.920.  At step one, the ALJ found that the plaintiff had not engaged in any substantial gainful activity since his application date of October 29, 2009. (Tr. 16).  At step two, the ALJ found that the plaintiff had the following severe impairments: bipolar disorder, degenerative disc disease and obesity.  (Tr. 16-17).  At step three, the ALJ determined that the plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (Tr. 17-19). In particular, the ALJ indicated that he specifically considered Listings 1.00 *et seq.* (musculoskeletal system) and 12.04 (affective disorders), as well as any adverse effects from the plaintiff's obesity. Id.

Before proceeding to steps four and five, the ALJ evaluated the record in order to determine the plaintiff's residual functional capacity. After a review of the medical records, opinion evidence from treating sources and state medical consultants, and rendering a determination with respect to the plaintiff's credibility, the ALJ found that the plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the following restrictions:

> The [plaintiff] is limited to the performance of occasional bending, stooping, twisting, squatting, kneeling, crawling, and balancing. Due to the [plaintiff's] mental impairment, he is limited to performing simple, routine, repetitious work with one or two step instructions and [is] limited to only occasional interaction with the public, co-workers, and supervisors.

(Tr. 19). In support of this finding, the ALJ noted, *inter alia*, that while the plaintiff has been diagnosed with and receives treatment for bipolar disorder, degenerative disc disease and obesity, "his condition appears to be stable and he has been receiving minimal treatment. The diagnostic and clinical evidence does not document clear evidence of ongoing and significant signs/symptoms which would result in complete disability." (Tr. 22).

5

The ALJ next proceeded to step four of the sequential evaluation, and concluded that the plaintiff has no past relevant work. (Tr. 22). The burden, therefore, shifted to the defendant to come forward with evidence that substantial gainful employment exists which the claimant has the residual functional capacity to perform.  20 C.F.R. § 416.920(a)(4)(v).  Considering the plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [he] can perform." (Tr. 23).  Accordingly, the ALJ held that a finding of "not disabled" was appropriate under the Act.  Id.  The plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 9-10).  The Appeals Council denied the request for review on September 4, 2012.  (Tr. 6-8).

**B.  Alleged Errors**

The plaintiff has identified three general areas of alleged error.  The Court will address each in turn.

**1.  Whether the ALJ's Step 3 Analysis Requires Remand**

The plaintiff first argues that the ALJ erred at step 3 by failing to discuss or credit all of the medical evidence of the plaintiff's spinal disorder.  In particular, the plaintiff alleges that the ALJ's analysis was inadequate, as it did not discuss the medical record as it pertains to Listing 1.04, which addresses disorders of the spine.  Accordingly, the plaintiff seeks a remand

for a more "in-depth discussion" regarding Listing 1.04. The ALJ's finding at step 3, which the plaintiff characterizes as "boilerplate" reads as follows:

> The undersigned has reviewed all of the evidence and concludes that the claimant's impairments, either singly or in combination, do not meet or equal the severity of any listing. The undersigned has specifically considered Listings 1.00 et seq. (Musculoskeletal) and concludes that he does not manifest the clinical signs and findings that meet the specific criteria of this section of the Listings or any other Listing level impairment. In reaching this conclusion, the undersigned has also considered the opinions of the Disability Determination Services (DDS) medical consultants who evaluated the issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion.

(Tr. 17-18).

For the reasons that follow, there is no need to remand this case to the ALJ for further discussion of Listing 1.04. Although the Second Circuit has "cautioned that an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent [the Court] from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence finding that his determination was supported by substantial evidence.'" Salmini v. Comm'r of Soc. Sec., 371 F. Appx. 109, 112 (2d Cir. 2010) (quoting Berry, 675 F.2d at 469. As addressed below, there is substantial evidence found in other portions of the ALJ's decision and in the medical records to support the finding that the plaintiff did not

7

have a listed impairment.  Accordingly, this is not a case "in which [the Court] would be unable to fathom the ALJ's rationale in relation to evidence in the record."  Berry, 675 F.2d at 469.

### a.   The Plaintiff Does Not Meet Listing 1.04

It is undisputed that the plaintiff suffers from degenerative disc disease, a spinal disorder covered by Listing 1.04.  There is also some evidence that the plaintiff suffers from spinal stenosis, which is also covered by this listing.  If his impairments meet or medically equal Listing 1.04, he is entitled to disability benefits. 20 C.F.R. § 416.920(d), 416.925(a).  However, the fact that the plaintiff has an impairment for which there is a listing does not establish that his impairment meets the listing.  See Malloy v. Astrue, No. 3:10-cv-190 (MRK)(WIG), 2010 WL 7865083, at *23 (D. Conn. Nov. 17, 2010 (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530.  In sum, the plaintiff bears the burden of showing that his impairments meets all of the criteria of a listed impairment.  Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).

A claimant meets Listing 1.04 by satisfying the requirements of any of three separate subsections: 1.04(A), 1.04(B), or 1.04(C). 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. In this case, the

plaintiff contends that his back impairment meets the requirements of Listings 1.04(A) and 1.04(C).[1]  However, there is substantial evidence in the record to conclude otherwise.

### i.   Listing 1.04(A)

In order to meet Listing 1.04(A), the plaintiff bears the burden of showing that his spinal disorder includes:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04(A). The plaintiff is correct that an August 5, 2003 lumbar MRI showed "large right posteolateral disc herniation at L5-S1, compressing the nerve root in the right lateral recess." (Tr. 331). The defendant does not dispute that this MRI demonstrates nerve root compression at the L5-S1 level. (Dkt. #21-1 at 6, Tr. 331).  Rather, the defendant argues that the August 5, 2003 MRI does not describe the plaintiff's condition during the relevant time period, specifically after the alleged June 1, 2006 onset date. While recognizing that it "is possible that the nerve root compression seen in 2003 persisted through plaintiff's alleged onset date in 2006," the defendant alleges that other evidence in the case "directly rebuts

---

[1] The plaintiff does not argue, nor is there any evidence in the record, that he satisfies Listing 1.04(B).

that possibility." (Dkt. #21-1 at 6-7). The Court agrees.

Three subsequent tests conducted in 2006, 2009, and 2011, respectively, demonstrate that the plaintiff did not meet the nerve root impingement requirement of Listing 1.04(A) after the June 1, 2006 alleged onset date. A March 7, 2006 lumbar myelogram and CT scan showed "no evidence of significant thecal or nerve root compression." (Tr. 329-30). A December 15, 2009 lumbar MRI showed a L5-S1 right paracentral disk protrusion that "abuts but does not significantly displace the right S1 nerve root." (Tr. 405). Moreover, a February 1, 2011 lumbar MRI found no "definitive impingement on the existing L5 nerve roots." (Tr. 670). These three test results provide "clearly credible evidence," Berry, 675 F.2d at 469, for a determination that the plaintiff did not meet the nerve root compression requirements contained in Listing 1.04(A) after the June 1, 2006 alleged onset date.

Moreover, there is also "clearly credible evidence" that the plaintiff does not suffer from a "limitation of motion of the spine" as required by Listing 1.04(A). As noted by the ALJ, the range of motion for the plaintiff's spine was deemed "normal" by the plaintiff's treating osteopathic physician, Dipak Patel, when he was examined in October, 2011. (Tr. 22, 708). Normal range of motion was also observed by Donna Wallace, APRN, when the plaintiff visited the Waterbury Hospital Emergency Department on December 15, 2009. (Tr. 21, 433). Dr. Joseph Walker, an orthopedic specialist

at the UConn Health Center, observed "full lumbar range of motion with flexion, extension, side bending, and rotation" on January 19, 2010. (Tr. 442). In sum, there is substantial evidence to conclude that the plaintiff did not meet the "nerve root compression" and "limitation of motion of the spine" requirements of Listing 1.04(A).

### i.   Listing 1.04(C)

There is also substantial evidence to conclude that the plaintiff has not met his burden of establishing that he meets Listing 1.04(C). To meet this listing, the plaintiff has the burden of demonstrating:

> [l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04(C). According to 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(K)(3), pseudoclaudication "may result from lumbar spinal stenosis, is manifested as pain and weakness, and may impair ambulation." The plaintiff has failed to cite to any medical evidence establishing that he suffers from pseudoclaudication, and the Court has not located any specific references to this term in the record. However, the plaintiff did report to Dr. Walker that he has "concurrent numbness in the leg and some pain related weakness." (Tr. 441). Nevertheless, rather than the "chronic nonradicular

11

pain and weakness" referenced in Listing 1.04(C), the record is replete with references to the plaintiff's complaints of radicular pain. See, e.g. Tr. 406, 441-42, 692.

However, even assuming, *arguendo*, that the plaintiff can demonstrate that he has experienced some instances of pseudoclaudication, there is substantial evidence in the record to conclude that the plaintiff does not meet the "inability to ambulate effectively" requirement of Listing 1.04(C). Under the regulations, "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(b)(1). Thus, to ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. at § 1.00(B)(2)(b)(2).

The plaintiff has not provided any opinions from a treating physician with respect to his ability to ambulate. Rather, his argument in this regard comes entirely from his subjective testimony, which undoubtedly attested to an inability to ambulate effectively. See, e.g. Tr. 749, 751-52. However, the ALJ deemed the plaintiff to be "not fully credible." (Tr. 20). "The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and

12

other evidence, regarding the true extent of the pain alleged by the claimant." Martins v. Chater, No. 96-6085, 1996 U.S. App. LEXIS 26343, at *3 (2nd Cir. October 8, 1996) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).  In particular, an ALJ is required to follow a two-step process in assessing the credibility of a claimant's subjective complaints.  First, the ALJ must determine whether the record supports a determination that the claimant possesses any medically determinable impairments that could reasonably be expected to produce his alleged symptoms.  20 C.F.R. § 416.929(b); SSR 96-7p.  Once, as here, the ALJ has determined that a claimant has impairments that could reasonably be expected to produce his alleged symptoms, the ALJ must assess the credibility of the claimant's complaints regarding "the intensity and persistence" of the claimant's symptoms so that the ALJ "can determine how [the claimant's] symptoms limit [his] capacity for work." 20 C.F.R. § 416.929(c)(1); SSR 96-7p.

Although the credibility analysis could have been more robust, it was, nevertheless, sufficient.  As noted by the ALJ, the plaintiff has had no surgeries or hospitalizations, he lives on the third floor of a house, he cares for himself with help from his girlfriend, and has been receiving minimal treatment for his back since the alleged onset date.  (Tr. 20, 22).  Upon examination in October 2011, the plaintiff expressed no complaints to Dr. Patel, and reported that he was trying to "apply for a taxicab limousine

13

service."  (Tr. 22, 708).  Dr. Patel assessed no limitations for driving. Id.  In addition, Dr. Heller, the state agency medical consultant, opined that the plaintiff could stand and/or walk for six hours in a work day.  (Tr. 42).  As noted by the ALJ, the plaintiff indicated in an undated form submitted to the Connecticut Department of Social Services that he can walk, shop for food, cook and visit people without help. (Tr. 18, 215). Taken as a whole, these facts provided the ALJ with a basis to doubt the plaintiff's credibility with respect to his ability to ambulate effectively. Based on the above analysis, the Court concludes that there is substantial evidence that the plaintiff did not meet listing 1.04(C).  A remand for a more in-depth analysis at step 3, as requested by the plaintiff, is not warranted. Salmini, 371 F. Appx. at 112; Berry, 675 F.2d at 469.

### 2. Whether the ALJ Properly Considered the Combined Effects of Multiple Impairments

The plaintiff next argues that the ALJ failed to properly consider the impact of obesity on the plaintiff as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(Q).  The Court disagrees. Section 100(Q) states that, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps in the sequential evaluation process, including when assessing an individual's residual functional capacity,

14

adjudicators must consider any additional and cumulative effects of obesity."  See also, SSR 02-1p.  Contrary to the argument of the plaintiff, the ALJ sufficiently considered these effects.  As noted by the ALJ:

> The undersigned has reviewed all of the evidence and concludes that the claimant's impairments, either singly or in combination, do not meet or equal the severity of any listing...Social Security Ruling [02-1p] provides that obesity is a medically determinable impairment and the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.  Obesity also has possible effects causing or contributing to impairments of other body systems.  The evidence of record does not reflect adverse effects of obesity on any body system to the degree that the claimant would have an impairment of Listing severity.

(Tr. 17-18).  This analysis was sufficient.  Moreover, the plaintiff has not demonstrated how his obesity actually restricts his ability to work beyond the ALJ's RFC finding.  In fact, neither the plaintiff's testimony nor his disability application contain an allegation that his obesity contributes to his inability to work. (Tr. 166-67, 745-72).  In sum, the Court finds no error with respect to the ALJ's combination of impairments analysis.

### 3. Whether the ALJ Should Have Considered State Agency Findings

The plaintiff next argues that the ALJ did not properly consider findings by the Connecticut Department of Social Services ("DSS") that the plaintiff is "unemployable." Dkt. #18-1 at 24. "While the determination of another governmental agency that a

social security disability benefits claimant is disabled is not binding on the [Commissioner], it is entitled to some weight and should be considered. Cutler v. Weinerger, 516 F.2d 1282, 1286 (2d Cir. 1975). See also 20 C.F.R. § 416.904. The problem with the plaintiff's argument is that the record does not contain any disability determination from DSS. It is the plaintiff who bears the burden of providing evidence of such a decision to the ALJ.[2] Instead, the record only contains, and the plaintiff only cites to: an unsigned and undated DSS supplemental medical form completed by the plaintiff in connection with his application for state benefits; a March 21, 2011 medical report completed by Dr. August D'Alessandro, the plaintiff's treating psychiatrist; and the plaintiff's testimony that he receives $212 each month "from the State of Connecticut." Dkt. #18-1 at 24; Tr. 211-18, 643-50, 758. None of these documents or statements constitute a disability finding by DSS, nor do they contain sufficient evidence in which the ALJ could reasonably infer such a finding was made by that agency. Thus, the ALJ was not obligated to treat these piecemeal references as a decision by DSS that the plaintiff was, in fact, disabled.

Moreover, even if the ALJ were to have considered these

---

[2]"In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)...This includes, but is not limited to...decisions by any governmental or nongovernmental agency about whether you are disabled or blind." 20 C.F.R. §§ 416.912(a)-(b)(5).

references as reasonably implying a determination of disability by DSS, there is no reason to believe that the ALJ would have assigned anything more than minimal weight to that finding. With respect to the opinion of Dr. D'Allesandro regarding the plaintiff's psychiatric limitations, which the plaintiff cites as evidence that he has been found disabled by DSS, the ALJ permissibly assigned "little weight" to these opinions. (Tr. 21, 636-42, 643-50). As noted by the ALJ, Dr. D'Allesandro's opinions were not based on treatment evidence or notes, and were unsupported by the plaintiff's reported activities of daily living. (Tr. 21, 215). There was no error.

## V. CONCLUSION

For the reasons set forth herein, the ruling of the ALJ that the plaintiff is not disabled is supported by substantial evidence in the record. Therefore, the plaintiff's motion to reverse or remand the decision for further administrative proceedings **(Dkt. #18)** should be **DENIED**. The defendant's motion to affirm **(Dkt. #21)** should be **GRANTED**. 28 U.S.C. § 636(b)(1)(A).

The parties may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72(b). Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Dated at Hartford, Connecticut this <u>  3rd  </u> day of February, 2014.

<u>/s/ Thomas P. Smith            </u>
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
